We will turn to the next case, Michelle Medina v. Commissioner of Social Security. Good morning, counsels. Good morning, Your Honor. Sorry, I was having trouble hearing. May it please the Court, this case is a Social Security disability case. It's one in which the primary issue that we present to the Court is whether the psychiatric impairments suffered by the plaintiff diminished her ability to work consistently. With respect to that question, we think that there are two errors by the administrative law judge. First, we believe that the administrative law judge erred in the weight given to the different opinions. There are basically three opinions. One is from a treating source. The plaintiff saw the treating source, saw their office 28 times, saw the treating source 12 and 16 times saw the counselor there, but saw them 28 times. That individual, that psychiatrist who is a specialist in the field, believed that the plaintiff had diminishment in his ability to work consistently, indicating more than 33 percent, indicating more than four days. That is consistent with the finding of the examiner for the defendant. That's Dr. Mary Ann Moore, who is a psychologist. Dr. Moore did her examination and felt that the diminishment to ability to work consistently, maintain a regular schedule, was up to markedly diminished, moderately to markedly. As the Court probably knows, the categories are none, mild, moderate, or marked. Dr. Moore, for the commissioner, felt that it was moderate, so certainly not inconsistent with treating physician. The non-examiner- Counsel, the AOJ found it meaningful that this person first complained of an inability to work in April 2015, but didn't seek treatment until the following year. The case has- she saw Dr. Skidates, who is a primary treating physician, and that's earlier, that's- It was a year after her complaint that she sought treatment for this inability to work. There was a period of time, and perhaps the onset date, because that's also when she filed. So perhaps the onset date that the judge should have found would have been later, and we don't have any complaint with that, but certainly- But doesn't the plaintiff, doesn't the claimant get to state the onset date? Well, she does it with Social Security at the very beginning, and the law is that the administrative law judge adjudicates the entire period. So even if there's a short period prior to first treatment, which is with Skidates, then- April 16th is when she seeks treatment. April 4th is 298, TR 298, when she saw Dr. Shah. Skidates, I would have to look to see, but either way, even if it's April 16th, then the judge finds- He adjudicates, or she, forgive me. The administrative law judge adjudicates the entire period. So if there's a period that she's disabled that exceeds the required 365 days, then she's determined to be disabled during that period. If not, then the judge determines the entire period, and certainly can find- You see this all the time in cases where they find a partially favorable decision, where the administrative law judge finds that, for whatever reason, either the disability didn't start until a later date set forth by Social Security. Social Security meets with the claimant. The claimant is unrepresented. But even if represented, still, you can allege an earlier date. The judge can find a later date, or the administrative law judge in a different case might find that the plaintiff was entitled to benefits with what's called a closed period. In other words, even though the claimant alleges a period of disability throughout an entire period, the administrative law judge- Counsel, the record seems to show that this claimant did very well taking Wellbutrin, and everything seemed to improve. Doesn't that argue against her inability to function? Well, the ones who would know that best, Your Honor, we believe is the treating psychiatrist. We have a treating psychiatrist here who gives an opinion, and the treating psychiatrist opinion, I mean, it's one thing for you, Your Honor. I've got the door for you. I'm sorry. We can't hear you. I'm sorry. I heard background noise. I wasn't sure if it was the court speaking or someone else. It is Dr. Shah, who is the treating psychiatrist. Again, claimants saw Dr. Shah's office 28 times, 12 times with Dr. Shah, and he's the one who felt after everything that she was diminished in her ability to work consistently. So we certainly would defer to a treating psychiatrist as opposed to what I might think or the administrative law judge might think. It is the treating psychiatrist. Clearly a treating psychiatrist in this case, and clearly his opinion is seconded by the examining source and not totally inconsistent with the non-examiner who uses the word moderate instead of marked but still finds diminishment to the plaintiff's ability to work consistently. Continue.  Forgive me, Your Honor. I'm having a lot of trouble hearing. Certainly we think that the matter should be returned so that the treating source opinion, the treating source opinion was basically not accepted, and the only opinion that was with almost no explanation by the administrative law judge was the non-examiner who didn't even have the records, and even when he looked at it, didn't seem to appreciate the report of Dr. Skidadis. So certainly we think that the treating source opinion backed up in full by the non-examiner, by the examiner who actually got to see her on behalf of the defendant and at least not inconsistent with the non-examiner, that the finding that there would be zero diminishment in ability to work consistently, zero diminishment in the ability to work consistently without absenteeism. Mr. Martin, just clear up for me if you would. The non-examining doctor for the Social Security Administration, am I right he did not have Dr. Shah's 2016 opinion available to him? Is that right because he was doing this examination before that took place? Is the chronology right or wrong? It's more than that. The non-examiner did not have any records, certainly did not have the opinion, and even the records he did have, which was from Dr. Skidadis, 292-294, who found a number of psychiatric issues, he had that opinion, the non-examiner, but he didn't even reference it, or that is he didn't reference any of the issues. He said no psychiatric treatment, and a week before she had been there, and he just simply ignores it. So yes to the court's answer, amplified by the fact that he didn't have any of these other records. Thank you. Counsel, before you go, do you know if this claimant is still taking the drugs? I don't know what this claimant's situation is in 2020. Thank you. We'll hear from the government. We'll hear from the commissioner. Counsel, proceed. Please the court, Graham Morrison on behalf of the Commissioner of Social Security. As phrased by the appellant, the primary issue in this case is the weight of the evidence. This case consists of three opinions from Dr. Harding, Dr. Shaw, and Dr. Moore, one of which, Dr. Harding's opinion, exactly matches the AOJ's RFC determination, one from Dr. Moore that closely matches it, and finally one from Dr. Shaw, which went in its own direction. Well, Mr. Morrison, excuse me, if this were simply a question of weighing the evidence, I think I'd have to agree with you that there is evidence in the record that is Dr. Harding's opinion that supports and, as you say, matches the ALJ's conclusions. But I thought the argument, as Mr. Gorton formulated it, runs a little more like this. The ALJ failed to give controlling or even significant weight to the treating doctor, Dr. Shaw, as he's supposed to do, so that it's not a one-to-one-to-one tie with Shaw saying she's disabled, Harding saying she's not, and Dr. Moore saying, well, maybe, I don't know, each side can pull things from her opinion that supports either Harding or Shaw. But they're not equal. So what is it about Dr. Shaw's opinion that is inconsistent with concrete medical or clinical findings that would justify disregarding or giving much less weight to that opinion than it presumptively would get? Well, it is the role of the ALJ to weigh competing opinions. In this case, he determined that Dr. Shaw's opinion only merits- However, we know what the role of the ALJ is. What Judge Lynch is asking you is, didn't he make a mistake in not giving Dr. Shaw weight as a treating physician? No. The ALJ properly analyzed his opinion and noted that Dr. Shaw's opinion was inconsistent with his own underlying treatment notes. Dr. Shaw saw the plaintiff 28 times in each of those 28 examinations. You find incredibly mild mental status examination findings, noting that the plaintiff is coherent, relevant, and cooperative, with normal speech, good insight and judgment, oriented in all spheres, attention span and concentration, which are good, and no cognitive deficits. Indeed, Dr. Shaw's narrative provides the same predictions. He describes her as good overall and stable. He notes that she's well-controlled on medication and that she was doing better. She also had robust activities of daily living to support this conclusion, such as volunteering at an animal shelter multiple times a week. She jogged four miles a day every day. She played sports, including going golfing, walking- On good days. I mean, I thought, and again, please correct me if I have this wrong, I thought that Dr. Shaw's conclusion, well, let's start with that the plaintiff's self-report is that there are days in a row on which she cannot get out of bed, and I thought that Dr. Shaw both credited and supported that, so I'm not sure how that is inconsistent with the fact that when she did get out of bed and get to Dr. Shaw's office, she was more or less fine. This is one of the issues that was directly contemplated by the AOJ, specifically the plaintiff's ability to maintain a schedule, and to that end, the AOJ's determination was supported by both Dr. Moore and Dr. Harding's opinion, as well as these underlying findings, which are mild to moderate, and the fact that the plaintiff was engaged in structured activity like volunteering at a dog shelter and jogging every day. So looking at the totality of the record and all the evidence, the AOJ took these competing opinions and determined that Dr. Harding and Dr. Moore's opinion was entitled to more weight than Dr. Shaw's, and he conducted his analysis in line with the relevant regulations in case law, and this is precisely the role of an AOJ, to take competing evidence and come to a conclusion and synthesize it all. Just going to another issue, I would like to speak about plaintiff's treatment history. As was noted, this is a relatively small period from 2015 to 2017, and as was noted, plaintiff did not receive any consistent medical treatment until mid-2016, over a year into the period. We did talk a little bit about nurse skiatis, so I just wanted to clarify that she was a nurse who the plaintiff saw once in the early period and not again, and also when she went to the further examination, she stated that she was not receiving any counseling or psychiatric treatment. So I'd like to talk about step five. Are you aware that there was a recommendation that this person work as a linen room attendant, photocopy machine operator, or a semiconductor bonder? Do you think those jobs really exist? Linen room attendant, where? All hotels in the Northern District, I believe, are now closed, so working at minimum capacity. Photo machine operator. It's my understanding, and I'm not the most technically advanced person, that photocopies are produced without an operator standing by, and I don't know what a semiconductor bonder is. How can you tell this woman that there is a job for her when these jobs sound crazy? That's the technical word. Well, starting with linen room attendant, it's more than hotels. According to the Dictionary of Occupational Titles, it also includes hospitals, which are very much operational right now and in need of services, and we also know that temporary disruptions in the economy are really pertinent. But you're telling her she could get one of these jobs? I believe she would be capable of performing one of these jobs, and I mean the linen room. Right, but here's the thing. If she can't get one because they're not available, what kind of relief are we giving this woman who, as Judge Lynch points out, sometimes can't get out of bed? When she can get out of bed, we're telling her, take this job, but we don't know that such a job is available. Well, the vocational experts specifically testified that these jobs are available in the requisite number. For example, the linen room attendant, he knows that there are 21,000 jobs in the… In the national economy. Correct. That is how we conduct these analyses, that we have vocational experts testify that there are sufficient jobs, and I mean some of these are more, for instance, there are 63,000 of the photo machine operator and the vocational… How long, counsel, do you think you keep your job as a linen room attendant if you only show up sporadically? Well, the AOJ's finding was that this individual could maintain a schedule, that she would not suffer from excessive absenteeism, and that was supported by the record, that was supported by the record. That's where we're having trouble going along with you, that she could do it. Well, it was a decision that was supported by substantial evidence. It was one that was… Well, you said. …of daily living, such as volunteering at a dog shelter and going jogging every day. It was supported by the medical examination records, which showed that she was capable of maintaining attention and concentration. It was supported by the opinion of Dr. Harding and Dr. Moore, and an AOJ is entitled to take that evidence and reach a determination. It's consistent with that. There only needs to be substantial evidence to affirm, and the substantial evidence is here in the form of her underlying medical examination findings, in the form of her activities of daily living, and the opinions. And if a job exists in the national academy that she can perform, then she is not disabled under the statutes. And I would like to point out that the AOJ did recognize that the plaintiff here was significantly limited. The RFC limits her to only simple routine tasks, only simple work-related decisions, and work that requires no more than occasional interaction with supervisors, coworkers, or the public. So there is no argument that she was limited. She was properly limited to this reduced range of work. And within that range of work, there are jobs that exist that were specifically outlined by the VE, and the commissioner met their burden, and therefore to demonstrate this, the plaintiff was not disabled. I'd also like to point out that Dr. Shah's opinion, which is really the only evidence pointing in the other direction of all this, in addition to being inconsistent with his own treatment notes, is a checkbox form which doesn't really provide a detail or analysis for how he arrived at these conclusions that were so inconsistent with his own treatment records. The 28 examinations all showed these unremarkable mild findings. So there really is a lack of evidentiary support. And this was the AOJ's analysis too. When he went through the issues and weighed the opinions, he reached the same conclusion because it simply was not supported by the record. And he specifically went through these issues of whether she would be able to remain on task during a day, whether she would be absent from three days or more per month, and the findings here were supported by evidence to each of these issues. Did the AOJ make a credibility finding about, I guess as a prior question, did Ms. Medina testify before the AOJ? Yes, Ms. Medina did testify. And did the AOJ make a credibility finding about her claims of being not able to get out of bed and so on? She found that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not consistent with the medical evidence. And it is important to note that many of plaintiff's own statements undermined her argument, again, that she was volunteering regularly multiple times a week, jogging every day, playing golf, going hiking. So really if you look at her statements too, you find support for the AOJ's decision. Thank you. Thank you, counsel. Mr. Gorton, you return to the military model. You're on mute, Mr. Gorton. You're on mute. Sorry. I'm sorry. A couple of things. First, with respect to the statement that the only opinion in support of the plaintiff is the treating doctor, it's just not true. Looking at the issue of ability to work consistently, there's no opinion that says that she could. The standard for Social Security examiners on any issue, whether it's sitting, standing, lifting, ability to deal with others, go to work, is none, mild, moderate, or marked. Dr. Moore says up to marked restriction maintaining a regular schedule, moderate to marked restriction. Whatever that may or may not be, it is not none. And the non-examiner said the same thing. He only said moderate, but that's TR-77, and he indicates specifically ability to maintain or to complete a normal workday and workweek with a couple other issues on page 77, and he says moderately limited. So he says what the plaintiff can do, but in doing it, she will be moderately limited in maintaining a schedule and completing a normal workday. Dr. Moore says up to marked, and Dr. Shah gives actual numerical where he says 33%. So certainly not inconsistent with moderate or marked when you consider there's marked, moderate, mild, or none. And both the consultants, the examining and non-examining, find up to marked and moderate. So we do not agree with the assessment of the government that with respect to the issue of doing it consistently, not with respect to the issue of doing the job, but doing it consistently, that the only evidence or the only opinion is Dr. Shah. We think there's no opinion that says she can do it consistently. The other thing, very briefly, is with respect to her daily activities. And clearly, and this goes along with point one, clearly there are days she can do it. The problem is that there are days she can't. I'm going to highlight, again, the defendant, the defendant's examining consultant, Dr. Moore. And the non-examiner and the administrative law judge says that that report shows that she can do everything consistently, but it doesn't. It says that she shops, cooks, spends time with family. Well, only when viewed in isolation. What she actually says is that she goes four or more days without dressing, bathing, and grooming. She tries to do a little bit of cooking, cleaning, and laundry, but she rarely does so. She has friends, but she never sees them. And she's withdrawn. She cooks twice a week out of seven, cleans once a week out of seven, does laundry once a week out of seven, shops twice a week, doesn't perform any child care, and showers three times a week. So, again, everything's consistent. When she's good, she's good. But the judge has to consider how much time she missed, and he doesn't, and when she's working, would she be off task? Thank you. Thank you. Thank you both. We'll reserve decision.